SO ORDERED: October 28, 2011.



James K. Coachys
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| RICHARD LEE MORELAND, | ) | Case No. 10-09914-JKC-7 |
| | ) | |
| Debtor. | ) | |
| _____ | ) | |
| TYRONE TICE and PATRICIA TICE, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Adv. Pro. No. 10-50602 |
| | ) | |
| RICHARD LEE MORELAND, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER DENYING PLANTIFFS' MOTION FOR SUMMARY JUDGMENT**

This matter comes before the Court on Plaintiffs Tyrone and Patricia Tice's Motion for Summary Judgment on their Complaint to Determine Dischargeability of Indebtedness against Debtor/Defendant Richard Lee Moreland. Having reviewed the parties' respective briefs and submissions, the Court hereby enters the following Order.

**Facts**

The parties' submissions establish the following undisputed facts:

1. Richard Lee Moreland ("Moreland" or "Debtor") owns and operates Eagle Construction Services as a sole proprietor.

2. In the Fall of 2008, Tyrone Tice ("Tice") and Patricia Tice (together, "Plaintiffs" or the "Tices") entered into a home improvement contract with Debtor, wherein Debtor agreed to perform various home improvement projects at Plaintiffs' residence.

3. Debtor failed to complete the projects and the Tices were of the opinion that some of the work he did perform was substandard. Plaintiffs ultimately sued Debtor in Hamilton Superior Court under Cause No 29D01-0907-PL-909 (the "State Court Litigation").

4. Pursuant to Debtor's demand and the parties' contract, the State Court Litigation went to arbitration. Debtor, however, did not otherwise participate in the arbitration.

5. On March 5, 2010, the arbitrator entered its award (the "Award") in favor of Plaintiffs and against Debtor. The state court then issued an Order Entering Arbitrator's Award as Judgment on April 16, 2010 (the "Judgment").

6. In relevant part, the Award states the following Findings of Fact:[1]

> 5. During [the parties' contract] negotiations, Tice sought from Moreland proof that Moreland was insured. In response to the Tice request, Moreland produced a Certificate of Insurance as proof that he was insured for the proposed projects.
>
> 6. During negotiations Moreland represented that he would need a down payment of fifty percent (50%) of the contract price to purchase necessary patio block, supplies and

---

[1] The Court notes that as support for some of its "undisputed" facts, the Tices cite to specific allegations in their Complaint. Unless otherwise admitted to by a defendant, the allegations of a complaint do not constitute evidence. *See Mosley v. City of Chicago*, 614 F.3d 391, 400 (7th Cir.2010). The Tices' reliance on the Complaint as evidence for summary judgment is inappropriate.

2

construction materials.

7.  Relying upon Moreland's representations that he was insured and competent to perform the negotiated scope of work, Tice executed a Contract for Construction - Remodeling ("Contract") on November 3, 2008. . . .

8.  After execution of the Contract, Tice paid Moreland $45,000.00 representing fifty percent (50%) of the Contract price to purchase patio block, materials and construction supplies. . . .

9.  Moreland began construction work on the Tice garage in December 2008. However, Moreland failed to complete this project, specifically; Moreland failed to complete trim work, insulation, painting and the concrete pad was improperly installed.

10.  After Moreland failed to return to the Tice property, Mr. Tyrone Tice made numerous efforts to reach hm, but Moreland failed to respond or return to the Tice property to complete the scope of work in the Contract.

11.  Tice, and subsequently his counsel, contacted the insurance company identified on the Certificate of Insurance produced by Moreland and discovered Moreland had failed to pay the insurance premiums and was therefore never insured for the project

12.  Because of Moreland's failure to complete the scope of the work outlined in the parties' Contract, he has breached the terms of the Contract.

13.  Moreland willfully, intentionally, knowingly schemed Tice by representing that he was insured for the project but never paid the premiums for the insurance.

14.  Tice relied on Moreland's fraudulent representations to [his] detriment by executing the Contract believing that Moreland had insurance.

15.  Moreland willfully, intentionally and knowingly defrauded Tice by requesting a payment of fifty percent (50%) of the Contract to purchase . . . materials and construction supplies, items he never purchased.

16.  Tice detrimentally relied on Moreland's fraudulent representations and presented a check to Moreland in the amount of $45,000.00

*Award* at 1-2.

7.  Having made those findings, the arbitrator concluded that Debtor breached the

parties' Contract. He also concluded that Debtor fraudulently induced Plaintiffs to enter into the Contract and to pay him 50% of the amount due under the Contract at the outset of the project. The arbitrator awarded actual damages of $45,000.00, plus interest of $875.00, attorney fees in the amount of $6,375.00, and court costs and sheriff service in the amount of $148.00. The arbitrator also ordered Debtor to reimburse Plaintiffs for the $1,375.00 they had previously pad for the costs of arbitration.

## Conclusions of Law

Based on the above facts, the Court makes the following Conclusions:

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I).

2. In their motion for summary judgment, Plaintiffs argue that the Judgment and Award are entitled to preclusive effect as a matter of law and that Debtor is estopped from relitigating whether his indebtedness to Plaintiffs arose from a a fraudulent misrepresentation under 11 U.S.C. § 523(a)(2) or from a "willful and malicious injury" under 11 U.S.C. § 523(a)(6). For the reasons stated below, the Court disagrees.

3. Under Federal Rule of Civil Procedure 56, made applicable to adversary proceedings by Federal Rule of Bankruptcy Procedure 7056, summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). With a motion for summary judgment, the burden rests on the moving party to demonstrate "that there is an absence of evidence to support the nonmoving party's case." *Id*. at 325. After the moving party demonstrates

the absence of a genuine issue for trial, the responsibility shifts to the non-movant to "go beyond the pleadings" to cite evidence of a genuine factual dispute precluding summary judgment. *Id.* at 322-23. If the non-movant does not come forward with evidence that would reasonably permit the finder of fact to find in its favor on a material question, then the court must enter summary judgment against it. *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir.1994) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-87 (1986)).

  4.  A state court judgment is entitled to full faith and credit in bankruptcy proceedings. 28 U.S.C. § 1738; *Matter of Bulic,* 997 F.2d 299, 304 (7th Cir.1993). Thus, in applying the principles of *res judicata*, this Court looks to the substantive law of the state that issued the judgment, giving the state court judgment the same preclusive effect it would receive in the forum state. *See Scarborough v. Fischer (In re Scarborough)*, 171 F.3d 638, 641 (8th Cir. 1999); *Bicknell v. Stanley*, 118 B.R. 652 (S.D.Ind.1990). There are two categories of *res judicata*: claim preclusion and issue preclusion. Claim preclusion applies where a final judgment on the merits has been rendered which acts as a complete bar to a subsequent action on the same issue or claim between those parties and their privies. *Northern Indiana Pub. Serv. Co. v. Sharp*, 732 N.E.2d 848, 854 (Ind. Ct. App. 2000). Issue preclusion, also known as collateral estoppel, bars the subsequent relitigation of the same fact or issue where that fact or issue was necessarily adjudicated in a former suit and the same fact or issue is presented in a subsequent action. *Id*. Where issue preclusion applies, the previous judgment is conclusive only regarding those issues actually litigated and determined therein. *Id.*

  5.  Collateral estoppel can be used either offensively or defensively. Offensive collateral estoppel involves a situation where the plaintiff seeks to foreclose the defendant from litigating an issue the defendant had previously litigated unsuccessfully in an action with another party. *Bartle*

*v. Health Quest Realty VII,* 768 N.E.2d 912, 917 (Ind.Ct.App.2002), *trans. denied*. Defensive collateral estoppel involves a situation where a defendant seeks to prevent a plaintiff from asserting a claim which the plaintiff had previously litigated and lost. *Id*. The present case involves the use of offensive collateral estoppel, as Plaintiffs seek to prevent Debtor from relitigating whether the subject debt arose from a fraudulent misrepresentation pursuant to § 523(a)(2)(A). Plaintiffs also seek to prevent Debtor from relitigating whether the subject debt arose from a "willful and malicious injury" pursuant to § 523(a)(6).

6.      The Indiana Supreme Court has adopted a two-prong test for the offensive use of collateral estoppel: (1) whether the party in the prior action had a full and fair opportunity to litigate the issue; and (2) whether it would otherwise be unfair under the circumstances to permit the use of collateral estoppel. *Tofany v. N.B.S. Imaging Sys. Inc.,* 616 N.E.2d 1034, 1038 (Ind.1993). The offensive use of collateral estoppel has traditionally been viewed as somewhat more problematic than the defensive use of collateral estoppel. In *Tofany,* the Indiana Supreme Court discussed the factors to be considered in a court's determination of whether offensive collateral estoppel should be utilized:

> The trial court may consider privity, the defendant's incentive to litigate the prior action, the defendant's ability to defend the prior action, and the ability of the plaintiff to have joined the prior action. When considering the defendant's incentive to litigate, the trial court may consider the interest at stake for the defendant as well as how the defendant perceived this interest. For example, did the defendant have its most experienced litigator in the prior action or, instead, did the defendant rely on a less experienced litigator? Similarly, the trial court may consider whether the forum in which the action was defended allowed the defendant to participate in the full range of discovery. For example, was the forum inconvenient thus preventing the defendant from presenting witnesses or from taking depositions.

*Id.* at 1038-39. The Court added that these factors are not exhaustive; rather, they merely provide

the framework for a court to utilize in its determinations. *Id.* at 1038.

7. Section 523(a)(2)(A) excepts from the discharge debt obtained through "false pretenses, a false representation, or actual fraud."

8. To prove a fraudulent representation for purposes of § 523(a)(2)(A), the creditor must prove that (1) the debtor made a representation to the creditor; (2) the representation was false; (3) the debtor intended to deceive the creditor; (4) the creditor relied on the misrepresentation and (5) such reliance was justifiable. *Field v. Mans*, 615 U.S. 59, 116 S.Ct. 437 (1995).

9. Here, while the Award concluded that Debtor fraudulently represented to the Tices that he was insured, the applicable standard under Indiana law does not require a showing of *justifiable* reliance or the intent to deceive. As such, the Arbitrator did not make specific findings as to these elements.[2] Without such findings, the Court cannot conclude that Debtor is precluded from relitigating these issues in this proceeding.

10. The Court also cannot conclude that the Award includes findings that preclude Debtor from litigating whether he willfully and malicious injured the Tices for purposes of § 523(a)(6).

11. Section 523(a)(6) excepts from discharge any debt "for willful and malicious injury by the debtor to another entity or to the property of another entity." To find that a debt is non-dischargeable under this section, the plaintiff must establish that: (1) it sustained an injury caused

---

[2] In the Award, the arbitrator set forth the following standard:
6. Under Indiana law, actual fraud exists when the following elements are fulfilled:
   A. A material misrepresentation of past or existing facts;
   B. Made with the knowledge or reckless ignorance or falsity;
   C. Causing the Claimant to rely upon misrepresentations to the Claimant's detriment. *ABN Amro Mortg. Group, Inc. v. Maximum Mortg., Inc.*, 429 F.Supp.2d 1031 (N.D.Ind.2006).
*Award* at 4.

by the defendant; (2) the injury caused was willful; and (3) the injury caused was malicious. *First Weber Group, Inc. v. Horsfall,* 2011 WL 1628472, at 3 (Bankr.W.D.Wis.2011), *citing Birriel v. Odeh,* 431 B.R. 807, 817 (Bankr.N.D.Ill.2010); *see also In re Whiters,* 337 B.R. 326, 339 (Bankr.N.D.Ind.2006).

12. The United States Supreme Court has stated that the word "willful" in § 523(a)(6) "modifies that word 'injury,' indicating that nondischargeability takes a deliberate or intentional *injury,* not merely a deliberate or intentional *act* that leads to injury." *Kawaauhau v. Geiger,* 523 U.S. 57, 61, 118 S.Ct. 974, 977,140 L.Ed.2d (1998) (emphasis in original). Therefore, to establish that an injury was "willful," there must be proof that the defendants intended to cause the injury and not simply "the act itself." *Id.* at 61–62, 118 S.Ct. at 977. The *Geiger* Court noted that to give the "willful and malicious" standard a broader interpretation would be to except from discharge injuries derived from "[e]very traffic accident stemming from an initial intentional act" and every "knowing breach of contract." *Id.* at 62, 118 S.Ct. at 977. The Court stated that such a broad interpretation would be in conflict with the policy that "exceptions to discharge 'should be confined to those plainly expressed.'" *Id.* (*quoting Gleason v. Thaw,* 236 U.S. 558, 562, 35 S.Ct. 287, 289, 49 L.Ed. 717 (1915)).

13. Maliciousness as used in § 523(a)(6) has been defined by the Seventh Circuit as a "conscious disregard of one's duties without just cause or excuse; it does not require ill-will or specific intent to do harm." *In re Thirtyacre*, 36 F.3d 697, 700 (7th Cir.1994). As explained by the Bankruptcy Court for the Northern District of Illinois in an October 2010 opinion:

> The application of *Thirtyacre's* definition of maliciousness in every scenario is not readily apparent. It has sometimes been difficult to gauge what types of nonaggressive conduct, *i.e.,* conduct that is not motivated by ill will, qualifies as

8

>being taken in "conscious disregard without just cause or excuse." Indeed, it has been observed that it is necessary for courts to determine malice on the totality of the circumstances because "there has been surprisingly little judicial and scholarly commentary discussing the degree or nature of 'wrongfulness' that constitutes 'malice' under section 523(a)(6)." *In re Bressler,* 387 B.R. 446, 455 (Bankr.S.D.N.Y.2008) (quoting *Viewer v. Jacobs ( In re Jacobs),* 381 B.R. 128, 139 (Bankr.E.D.Pa.2008)). It can at least be said, however, that the "key to maliciousness under § 523(A)(6)" is "consciousness of wrongdoing." *See In re Young,* 428 B.R. 804, 818 (Bankr.N.D.Ind.2010); *In re McCarthy,* 179 B.R. 876, 880 (Bankr.N.D.Ill.1995).

*In re Vaccaro*, 2010 WL 4053914 (Bankr.N.D.Ill.2010).

14.     None of the Arbitrator's findings speak to whether Debtor intended to injure the Tices or whether such injury was done "without just cause or excuse." Thus, the Court cannot conclude that the Award collaterally estops Debtor from litigating those issues here.

15.     Based on the foregoing, the Court cannot conclude that Plaintiffs are entitled to summary judgment in their favor as a matter of law. Their motion for summary judgment is, therefore, denied. The Court will issue an order scheduling this matter for trial in the near future.

###

Distribution:

David R. Krebs
Elizabeth N. Hahn
Erika K. Singler